Michael J. COAR, William D. Colbert, Bruce B. Hayes, Charles T. McArthur, Bruce Tierney, and United Transportation Union, Plaintiffs,

v.

METRO–NORTH COMMUTER RAILROAD COMPANY and Brotherhood of Locomotive Engineers, Defendants.

No. 84 Civ. 5795 (LFM).

United States District Court, S.D. New York.

Sept. 25, 1985.

Norton N. Newborn Co., L.P.A., Cleveland, Ohio, Schulman & Abarbanel, New York City by Norton N. Newborn, Cleveland, Ohio, Howard Schulman and James M. Altman, New York City, for plaintiffs.

Walter E. Zullig, Jr., Gen. Counsel, and Robert M. Lutsberg, Metro-North Commuter R. Co., New York City, for Metro-North Commuter Railroad Company.

Ross & Kraushaar Co., L.P.A., Cleveland, Ohio, Shapiro, Shiff, Beilly, Rosen-

berg & Fox, New York City by Harold A. Ross, Cleveland, Ohio, Sidney Fox, New York City, for Broth. of Locomotive Engineers.

## OPINION

MacMAHON, District Judge.

Plaintiffs move, pursuant to Rule 56, Fed.R.Civ.P., for summary judgment of their claims based on violations of the Railway Labor Act (RLA), 45 U.S.C. §§ 151 *et seq.* (1972). Defendants move, pursuant to Rules 12(b)(6) and 56, Fed.R.Civ.P., for an order dismissing the complaint. Since the essential facts are not in dispute, this action is ripe for summary judgment.

## FACTS

Since January 1, 1985, the five individual plaintiffs have been employed by defendant Metro-North Commuter Railroad Company (Metro-North) as passenger engineers and have been members of the United Transportation Union (UTU), the bargaining representative for firemen, conductors and brakemen employed by Metro-North. UTU does not represent engineers in collective bargaining.

Defendant Brotherhood of Locomotive Engineers (BLE) is the executive bargaining representative for the class of passenger engineers employed by Metro-North. At various times, three of the individual plaintiffs have been members of BLE.

The current collective bargaining agreement negotiated by BLE and Metro-North provides for rates of pay, hours of work, health and welfare benefits, seniority rights and other terms and conditions of employment for the engineers. The agreement also contains discipline and investigation rules for the resolution of disputes involving the interpretation and application of the agreement's provisions.

Rules 22 and 23 of the agreement provide that: a claim by a passenger engineer for compensation "may be made only by a claimant, or, on his behalf, by a duly accredited representative;" the passenger engineer and "his duly accredited representative will have the right to be present during" disciplinary investigations; and the representative may accompany the claimant at appeal hearings and may process appeals of any claim, grievance or disciplinary action on behalf of the engineer. Rule 1(c) defines "duly accredited representative" as the "General Chairman, Local Chairman of the [BLE] having jurisdiction or any elected or appointed officer of the [BLE] designated by the General Chairman." In addition to having the right to be represented by BLE, engineers have the right to represent themselves in disciplinary hearings and in appeals under Rules 22 and 23.

Each of the five individual plaintiffs was subject to a disciplinary investigation by Metro-North in 1983 or 1984, and each sought to have UTU representation at those proceedings. Although Metro-North initially allowed one plaintiff to so proceed, it later determined that BLE was the only union which could represent engineers at grievance and disciplinary proceedings. Metro-North refused to permit UTU representatives to participate at such proceedings, except as observers.

There is no dispute that, pursuant to the BLE/Metro-North agreement, engineers are restricted to representation by BLE at grievance and disciplinary proceedings. Defendants contend that an engineer has no right to have UTU representation. Plaintiffs argue, however, that the restriction violates §§ 2 and 3 of the RLA, 45 U.S.C. §§ 152 and 153, and seek to have the restriction invalidated.

## DISCUSSION

*Jurisdiction*

■ BLE initially argues that, pursuant to §§ 2 Ninth and 3 First of the RLA, 45 U.S.C. §§ 152 Ninth and 153 First, we lack subject matter jurisdiction to resolve this dispute. Section 2 Ninth of the RLA places exclusive and primary jurisdiction for the resolution of employee disputes concerning representation with the National Mediation Board.

BLE asserts that the question presented here is whether UTU or BLE will represent the individual plaintiffs at grievance and disciplinary proceedings, and, therefore, jurisdiction lies with the National Mediation Board. Alternatively, BLE argues that this action concerns a minor dispute involving the interpretation of who is a "duly accredited representative" under Rule 1(c) of the BLE/Metro-North agreement. Resolution of these minor disputes, including interpretation or application of agreements, is left to the National Railroad Adjustment Board (NRAB), pursuant to § 3 First (i) of the RLA.

The Supreme Court has determined that district courts have no authority to resolve jurisdictional controversies between unions and placed jurisdiction for resolution of these representational disputes with the National Mediation Board.[1] However, the Supreme Court has not addressed the issue presented here, that is, "whether an employee's assertion of 'the privilege of choosing his own representative for the prosecution of his [grievance] claims' under the [RLA] is justiciable."[2]

This is neither a purely jurisdictional dispute over which union is the appropriate representative, nor a minor dispute involving the interpretation or application of the provision regarding the "duly accredited representative." This dispute involves whether the provisions of the BLE/Metro-North agreement, which restrict an employee's choice of representative for handling grievance and disciplinary proceedings, are valid in light of the rights of employees under the RLA.

It is well settled that courts have the power to enforce the RLA[3] and that issues of validity are appropriate for judicial consideration.[4] We find, therefore, that jurisdiction is proper here.

*Representation under the RLA*

The question before us now is whether the provision in the BLE/Metro-North agreement, restricting plaintiffs to BLE representation at grievance and disciplinary proceedings, is valid in light of the rights of employees under the RLA. Since no one provision of the RLA clearly addresses this issue, an examination of the purposes of the Act and the aggregate rights it provides is necessary.

One of the purposes of the RLA is to promote industrial peace and to avoid interruption of commerce.[5] Additionally, the Act forbids limiting employees' freedom to associate and their right to join a labor organization.[6]

While a collective bargaining agreement may require an employee to belong to a union as a condition of employment,[7] membership in any one of the national labor organizations, including BLE or UTU, is sufficient.[8] The right of an employee to belong to any union implicitly carries with it the right to enjoy the privileges of membership, including representation by that union. "Inherent in the right of an employee to join a railway employees' labor union of his choice is the right to enjoy fully the fundamental benefits of union membership. It is difficult to conceive of a

---

1. *Switchmen's Union v. National Mediation Bd.,* 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943); *General Committee v. M.-K.-T. R. Co.,* 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76 (1943); *General Committee v. Southern Pac. Co.,* 320 U.S. 338, 64 S.Ct. 142, 88 L.Ed. 85 (1943).

2. *McElroy v. Terminal R. Ass'n,* 392 F.2d 966, 968 (7th Cir.1968), *cert. denied,* 393 U.S. 1015, 89 S.Ct. 611, 21 L.Ed.2d 559 (1969), citing to *General Committee v. Southern Pac. Co., supra,* 320 U.S. at 342, 64 S.Ct. at 144.

3. *Chicago & N.W. R. Co. v. United Transportation Union,* 402 U.S. 570, 578–81, 91 S.Ct. 1731, 29 L.Ed.2d 187 (1971), and cases cited therein.

4. *Felter v. Southern Pac. Co.,* 359 U.S. 326, 327–28, 79 S.Ct. 847, 850, 3 L.Ed.2d 854 (1959); *Brotherhood of R. Trainmen v. Howard,* 343 U.S. 768, 774, 72 S.Ct. 1022, 1025, 96 L.Ed. 1283 (1952).

5. 45 U.S.C. § 151a.

6. 45 U.S.C. § 151a(2).

7. 45 U.S.C. § 152 Eleventh (a).

8. 45 U.S.C. § 152 Eleventh (c).

benefit of union membership more fundamental than union representation in employee/employer dispute proceedings." [9]

Employees have the right to designate representatives, who need not be in the employ of the carrier, "without interference, influence, or coercion" by the carrier.[10] Section 2 Second of the RLA provides that all disputes between a carrier and its employees shall be considered and, if possible, decided in conference between representatives designated and authorized by the carrier and by the employees interested in the dispute.[11] "On its face, this provision guarantees an individual employee the right to prosecute his grievances through any representative he may designate," including the minority union to which he belongs.[12]

In *McElroy v. Terminal R. Ass'n*, 392 F.2d 966 (7th Cir.1968), *cert. denied*, 393 U.S. 1015, 89 S.Ct. 611, 21 L.Ed.2d 599 (1969), the court found that employees have the right to designate the minority union to which they belong as their representative at the company level and before the NRAB in disciplinary investigations and grievances. Defendants contend, however, that *McElroy* is inapplicable because it is factually distinguishable and the court incorrectly interpreted the RLA.

In *McElroy*, employees were allowed to shuttle between different crafts, *i.e.*, firemen and engineers, represented by different unions. Here, although the BLE/Metro-North agreement specifically prohibits engineers from shuttling between crafts, they, like plaintiffs in *McElroy*, "have the right to maintain their membership in the [UTU] while working as engineers." [13] This right exists even though the UTU represents firemen, and not engineers, in collective bargaining. Membership in a minority union, guaranteed by the RLA, would be meaningless if the engineers could not designate the minority union as their representative at grievance and disciplinary proceedings.

Defendants also contend that the *McElroy* court misinterpreted the RLA by finding that a single employee could designate a minority union as representative. They argue that "representatives designated ... by the employee," as stated in § 2 Second, refers to the collective designation of representatives by the majority of the employees. Since the employees, as a group, designated BLE to be their representative at collective bargaining, defendants conclude that only BLE may handle grievance and disciplinary proceedings.

■ We find, however, that "representatives designated by employees" may reasonably be interpreted to mean a representative designated by a single employee. "It is only with reference to craft organizations and *collective bargaining*, that is, craft action, that a union chosen as a representative must be that chosen by the majority." [14]

The rights of an individual employee are not diminished in the RLA by the rights of the majority. " [T]he individual employee's rights cannot be nullified merely by agreement between the carrier and the union. They are statutory rights, which he may exercise independently or authorize the union to exercise in his behalf." [15] The individual employee's right to choose his own representative at grievance or disciplinary proceedings cannot be ignored or trampled

9. *Taylor v. Missouri Pac. R. Co.*, 614 F.Supp. 1320, 1323, (E.D.La.1985).

10. 45 U.S.C. § 152 Third.

11. 45 U.S.C. § 152 Second.

12. *McElroy, supra,* 392 F.2d at 969.

13. *McElroy, supra,* 392 F.2d at 971.

14. *General Committee v. Southern Pac. Co.*, 132 F.2d 194, 199 (9th Cir.), *rev'd on other grounds*, 320 U.S. 338, 64 S.Ct. 142, 88 L.Ed. 85 (1943).

15. *Elgin, J. & E.R. Co. v. Burley*, 325 U.S. 711, 740 n. 39, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945) (employees have the right to present their own grievances to the NRAB).

either by the carrier or by the majority union. Legislative history supports this conclusion.

In hearings on the RLA before the House Committee on Interstate and Foreign Commerce, Commissioner Eastman commented:

"When it comes to collective bargaining in the matter of wages and working conditions, it seems to me plain that a company ought not be compelled to deal with more than one organization. It ought not to have to make bargains with two or three different organizations. But when it comes to the presentation of grievances, that is a different matter, and certainly an individual employee ought not to be stopped in any way from taking his grievance up directly with management, and I think that ought to apply to any group of employees." [16]

If an individual may present his own grievances, it follows that he may designate the representative of his choice to do likewise.

■ The combination of the right to designate a representative, without interference, and the right to belong to a minority union, plus the spirit of the RLA which ensures the rights of an individual, establishes that an employee is entitled to designate a representative other than his collective bargaining union at grievance and disciplinary proceedings. Any hardship which the carrier may face by dealing with different representatives is clearly outweighed by the hardship an employee would endure if represented by a union which he believes does not represent his best interests.

Accordingly, we grant plaintiffs' motion for summary judgment and find that the individual plaintiffs are entitled to designate the UTU as their representative at grievance and disciplinary proceedings. Defendants' motion to dismiss the complaint is denied in all respects.

So ordered.

---

16. Hearings of House Committee on Interstate and Foreign Commerce on the Railway Labor Act, H.R.Rep. No. 7650, 73d Cong., 2d Sess., p. 44.